IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANDREW J. DAVISON,                     Case No. 1:24-cv-00227-PAB

                Plaintiff,

      -vs-                             JUDGE PAMELA A. BARKER

CITY OF LORAIN, *et al.*,

                Defendants.    MEMORANDUM   OPINION   AND
ORDER

This matter comes before the Court upon Defendants City of Lorain, Lorain Police Officer Cielo Rodriguez ("Rodriguez"), Lorain Municipal Prosecutor Mallory Santiago ("Santiago"), Lorain Law Director and Chief Municipal Prosecutor Patrick Riley ("Riley"), and Lorain Police Officer Brent Payne's ("Payne") (collectively referred to as "City Defendants") Motion to Dismiss Plaintiff Andrew J. Davison's ("Davison") Complaint, filed on March 7, 2024, as well as Defendant Lorain County Assistant Prosecuting Attorney Victor Perez's ("Perez") Motion to Dismiss, filed on February 28, 2024.  (Doc. Nos. 5, 6.)  On March 14, 2024, Davison filed a Response to Perez and the City Defendants' Motions to Dismiss.  (Doc. No. 8.)  On March 26, 2024, City Defendants filed a Reply to Davison's Response.  (Doc. No. 9.)  Perez did not file a Reply.  Accordingly, Perez and City Defendants' Motions to Dismiss are ripe for a decision.

For the following reasons, the Court **GRANTS** Perez's Motion to Dismiss, and **GRANTS** City Defendants' Motion to Dismiss.  (Doc. Nos. 5, 6.)

I.    **Background**

    A.    **Factual Background**

Davison's Complaint sets forth the following allegations.

On January 3, 2023, Davison noticed four people, including police officers, on his Ring camera standing outside of his apartment door.  (Doc. No. 1 at PageID# 1.)  Davison noticed that they had a "riot shield and vest."  (*Id.*)  Davison activated his Ring camera and asked them what was going on and how he could help them.  (*Id.*)  The individuals did not respond to him, but engaged in conversation amongst themselves, stating that Davison had a dog, that they thought he was not there, and that nobody had seen any of Davison's cars.  (*Id.*)  The police "physically and forcefully removed" Davison's Ring camera and placed it on a fire extinguisher in Davison's hallway.  (*Id.*)

Denise Nietez,[1] the property manager of Lakeview Apartment Complex, heard by audio only, asked the police to please not kick the door in and said that she had the key to access Davison's apartment.  (*Id.*)  One of the officers asked if she had a key, and after Ms. Nietez answered "yes," she opened Davison's door and the officers entered his apartment.  (*Id.*)

Davison called his federal parole officer, Alfred Preston, and asked Mr. Preston if he had an arrest warrant.  (*Id.*)  Mr. Preston responded that he had no knowledge as to why the police would be at Davison's home.  (*Id.*)  Davison called 911 and asked why the police were at his home, removed his Ring camera, entered his home, and refused to respond to him through his camera.  (*Id.*)  The operator told Davison that it was an investigation and that she could not give him any information. (*Id.*)  Davison told her that he would like to make a police report because his property had been damaged by the police.  (*Id.*)  The operator gave Davison a phone number to call.  (*Id.*)  Davison called the number and spoke with Rodriguez, who told Davison that he needed to speak with him and

_____

[1] In his Response, Davison spells Ms. Nietez's name as "Nieto."  (Doc. No. 8 at PageID# 74.)  The Court will use the name that Davison provides in his Complaint.

asked if he could meet with him.  (*Id.*)  Davison stated to Rodriguez that he had been talking to him through the Ring camera and that he did not respond to which Rodriguez replied that he knew and asked Davison to meet him at the Lorain police station.  (*Id.*)

Davison went to the police station, where Rodriguez and Payne stated to Davison that they had a warrant for his arrest.  (*Id.* at PageID#s 1–2.)  Davison asked why they had an arrest warrant, and Rodriguez and Payne stated it was for drug trafficking.  (*Id.* at PageID# 2.)  The officers then read Davison his *Miranda* rights and asked him whether he would like to talk to them.  (*Id.*)  Davison invoked his right to remain silent and was placed in a room with Payne.  (*Id.*)  Payne searched Davison and removed his U.S. currency and cellphone.  (*Id.*)  An unnamed female police officer arrived, and Payne handed her Davison's property.  (*Id.*)  When the officers and Davison were walking out of the station, Rodriguez came and took Davison's property from the female officer, stating that he was seizing it.  (*Id.*)  Davison stated that he had not seen a "search and seizure form," nor did he know the exact amount of money seized.  (*Id.*)  Rodriguez told Davison that he would "probably get it back," but was seizing it due to his investigation.  (*Id.*)  Davison asked Rodriguez how he could still be investigating him when he was in handcuffs, but Rodriguez did not respond, and Davison was taken to the Lorain County jail.  (*Id.*)

Davison's arraignment occurred the next morning, on January 4, 2023.  (*Id.*)  The court asked the prosecution for its recommendations.  (*Id.*)  Rodriguez requested a $100,000 bond with a GPS, and the court set Davison's bond as such.  (*Id.*)  Davison posted bond and paid $320 for a GPS and was required to make a payment of $320 per month to remain on bond.  (*Id.*)  That same day, Davison contacted Mr. Preston and updated him about his charges and bond.  (*Id.*)  Davison hired attorney Anthony Baker to represent him, and his preliminary hearing was set for January 10, 2023.  (*Id.*)

3

At his preliminary hearing, Attorney Baker informed Davison that he was going to ask for a continuance because the police and prosecution had not given him any evidence or police reports, so neither Davison nor his counsel knew what the prosecution would present other than the testimony of Rodriguez.  (*Id.*)  Davison asked Attorney Baker if the prosecutor could dismiss if they have no evidence, and Attorney Baker responded that the judge would accept "whatever the police say and find probable cause."  (*Id.*)  The court asked Davison what he wanted to do, and Davison told Attorney Baker that the only way he was not going to have his hearing that day was if "they remove the GPS" because Davison was "in fear of my safety" being that he had been through false warrants before with no record of them being issued or returned, although the record stated that they were official documents.  (*Id.*)  Attorney Baker advised the court that Davison would file a motion to modify his bond and have the GPS removed since $100,000 was a "high enough bond" to assure Davison came to court.  (*Id.*)  Rodriguez then stated that Davison's federal parole officer, Mr. Preston, had concerns about him because he had been in contact with him, and even on the morning of January 4, he inquired about the GPS and supported it.  (*Id.*)  Santiago, the prosecutor, repeated what Rodriguez said, and Davison stated that what they had said was a "lie and a complete false statement" and that Rodriguez "had no problem making complete lies up without being provoked to do so."  (*Id.*)

The court ruled in the State's favor and ordered "CSR"[2] to appoint someone to monitor Davison's GPS.  (*Id.*)  Davison stated that he would be having his hearing.  (*Id.*)  Rodriguez testified to one controlled buy for a single date and time and that he had no evidence or reports because they

---

[2] While Davison does not define "CSR," the term appears to refer to Lorain County's Pretrial Court Supervised Release Program.   *See*   https://courtofcommonpleas.loraincounty.us/departments/adult-probation/Pretrial-Program---Court-Investigation (last accessed May 17, 2024).

were on a file at his office.  (*Id.*)  The court found probable cause based on his testimony and bonded the case to the grand jury.  (*Id.*)

While waiting to be indicted, Davison asked Attorney Baker about the status of the indictment. (*Id.*)  Attorney Baker told Davison that he should not be worried.  (*Id.*)  Davison also informed Attorney Baker that he had spoken with Mr. Preston and relayed what Rodriguez said at his hearing. (*Id.*)  Mr. Preston told Davison that if he wanted a GPS on him, he could put one on him, that he was not working with Rodriguez and Santiago, that he has his own GPS, and that he could "never tell them you were not in contact" because he had just seen him and he was in compliance and Davison was the one who called Mr. Preston.  (*Id.* at PageID#s 2–3)  Davison gave Attorney Baker Mr. Preston's cellphone number, and after they spoke, Attorney Baker filed another motion to modify bond to remove the GPS and clarify the record since CSR had received a form with restrictions when the judge did not order any.  (*Id.* at PageID# 3.)  These restrictions included a urine test and travel request forms.  (*Id.*)

The case went in front of Administrative Judge James Maraldi, who denied Davison's second motion, stating that the court "takes entries over word of mouth," despite Davison's assertion that the entry was not correct and that the transcript instead told "the truth."  (*Id.*)

On July 30, 2023, Davison received a text message from Attorney Baker informing him that he had been indicted with six charges from two different dates.  (*Id.*)  At his arraignment on August 3, 2023, Attorney Baker showed up late and did not have a chance to talk with Davison.  (*Id.*)  Davison was asked whether he had been served with the indictment, to which Davison answered "no," and the sheriff approached Davison and handed him an envelope with the indictment.  (*Id.*)  When Davison went to open it, Judge Maraldi asked him if he waived a reading of the indictment or any challenge

to the indictment.  (*Id.*)  Davison asked if it could have time to read the indictment, and Judge Maraldi said that he did not have to waive or sign anything.  (*Id.*)  Davison then stated he would not be waiving or signing anything and then left.  (*Id.*)

Davison then called Attorney Baker and asked where the State could get the information from since it was left out of the hearing and the State had not provided a police report.  (*Id.*)  Attorney Baker stated that they had to wait for discovery, to which Davison stated that it "had to be some type of grand jury tampering" because he could not see how the grand jury could have information Davison and Attorney Baker had never heard about.  (*Id.*)

When discovery came, Davison saw that a narrative report had been made instructing what to charge Davison with.  (*Id.*)  The narrative report "had the same report number as the initial report and complaint" and was labeled "first police report."  (*Id.*)  Davison let Attorney Baker know that the State used the narrative report to try to backdate the report even though the narrative report was clearly made after his arrest since it contained information dated after his arrest and preliminary hearing. (*Id.*)  Davison asked Attorney Baker if the report was made after his hearing, who took it to the grand jury, because they should have only had the transcript of the hearing since the transcript "was the only evidence submitted."  (*Id.*)  Davison felt that Attorney Baker was no longer being honest and could not be trusted, and so sought different counsel, retaining attorney Clarissa Smith.  (*Id.*)

Davison alleges that Attorney Smith obtained audio of Davison's preliminary hearing and contacted Mr. Preston to hear his side.  (*Id.*)  Davison alleges that Mr. Preston advised Attorney Smith that he and Rodriguez did not have the conversations Rodriguez spoke about at the preliminary hearing and that he only told him about Davison's arrest, to which Rodriguez asked Mr. Preston about Davison's address and tow truck information.  (*Id.*)  With the audio of the preliminary hearing,

Attorney Smith filed another motion to modify bond, and a hearing on the motion was set for November 13, 2023.  (*Id.*)

At the hearing, Santiago stated that it was her on the audio tape, that she said whatever was said on the tape, and that any information she had told the court she received from the case and Rodriguez.  (*Id.* at PageID# 4.)  Rodriguez stated that he could not recall the full incident, and did not remember talking to Mr. Preston about Davison's bond or GPS, just that Mr. Preston was "worried" because Davison "had not been in contact."  (*Id.*)  The court granted Davison's motion in part, and he then no longer had to pay for the GPS until the date of his trial less than 30 days away.  (*Id.*)  According to Davison, Rodriguez came up "with a new reason for keeping it on," which is that Davison "knows the identity of the CI."  (*Id.*)

Davison then went to the Lorain Police Department to obtain information on how to file a complaint against Rodriguez for violating his rights, making false statements on the record to the court, destroying his Ring camera, and illegally taking his money and cellphone.  (*Id.*)  Davison filed a complaint against Rodriguez on November 16, 2023.  (*Id.* at PageID#s 4–5.)  Davison then attempted to contact Riley, seeking information on how to file a complaint against Santiago, who told him that he was the only person Davison could file a complaint with or gather information to file a complaint.  (*Id.* at PageID# 4.)  Davison was eventually informed that Riley would not take or return Davison's call, nor would he give Davison information on how to file a complaint or take Davison's complaint.  (*Id.*)  According to Davison, Riley took this position "because of bias" and because he was "trying to protect an employee."  (*Id.*)

Davison's trial was set for December 7, 2023.  (*Id.*)  Davison asked Attorney Smith when he would be allowed to see the alleged buys and phone calls, and Attorney Smith stated that the court

had ordered that the evidence be for attorneys' eyes only.  (*Id.*)  Attorney Smith said she would ask the court or prosecution to remove the order, but her request was denied.  (*Id.*)  Davison maintained his innocence and decided to proceed with trial.  (*Id.*)

On December 6, 2023, Attorney Smith contacted Davison, stating that the court had contacted her and asked her if there were any last-minute motions that they had planned on filing before trial.  (*Id.*)  According to Davison, Attorney Smith told the court that there were a few she was considering, and the court asked if one was for a speedy trial right violation.  (*Id.*)  Attorney Smith stated that that was one of the motions, and was advised to file the motion before trial.  (*Id.*)

On December 7, 2023, the day of Davison's trial, Attorney Smith advised Davison that trial was canceled because he never waived his speedy trial right and the information the State was relying on "was from a forged signature by previous Attorney Baker" and papers saying that Davison waived his preliminary hearing when the record reflected that he did have his hearing.  (*Id.*)

On January 30, 2024,[3] Davison's case was dismissed for speedy trial violations.  (*Id.* at PageID# 5.)

Since he filed his complaint against Rodriguez, Davison alleges that "they are holding up investigating it"[4] and Davison has received "false information from the police as well as threats" and has been denied the ability to file a police report.  (*Id.*)  On February 2, 2024, Davison received text messages from two different phone numbers as well as a phone call telling him to "stop filing

---

[3] In his Complaint, Davison alleges that his case was dismissed on January 30, 2023. (Doc. No. 1 at PageID# 5.)  However, this appears to be in error, as the Lorain County Court of Common Pleas docket indicates that Davison's case was dismissed on January 30, 2024.  *See* https://cp.onlinedockets.com/loraincp/case_dockets/Docket.aspx?CaseID=479602 (last accessed May 30, 2024.)

[4] It is unclear whether "they" in this allegation corresponds to the State, the trial court, Riley, the Lorain Police Department, or any other Defendant in this case.

complaints or something would stick in my anus."  (*Id.*)  These messages and/or calls were also "talking about guns and drugs."  (*Id.*)  Davison went to the police station in Lorain, Ohio, to file a police report on phone harassment and threats.  (*Id.*)  Davison was asked if he knew the identity of the callers, and Davison stated "no."  (*Id.*)  Davison was further asked if he had an idea of who it may be, to which Davison stated that he "thought it to be Lorain police officers because he had just obtained the new phone number and the officers "had equipment to get access to my phone number."  (*Id.*)  Davison was then told to fill out another complaint to the board of professional standards and add it to his complaint against Rodriguez from November 16, 2023.  (*Id.*)

According to Davison, Officer Perez has not responded to motions in state court and the state court "has allowed it."  (*Id.*)

**B.  Procedural History**

On February 6, 2024, Davison filed the instant lawsuit against Perez and City Defendants, seeking relief under 42 U.S.C. § 1983.  (Doc. No. 1.)  In his Complaint, Davison brings twelve grounds for relief under Section 1983: (1) a violation of civil rights; (2) a violation of his right to due process; (3) misconduct; (4) illegal search and seizure acting as a rubber stamp for police; (5) discrimination; (6) the making of false statements; (7) denial of his grievance process right; (8) threats and harassment; (9) violation of his right to a reasonable bond; (10) wrongful imprisonment; (11) grand jury tampering; and (12) falsified report numbers.[5]  (*Id.* at PageID# 1.)

---

[5] Davison's Complaint also does not delineate which claims are asserted against which Defendants.

In his Complaint, Davison indicates that he is suing City Defendants Santiago, Rodriguez, and Payne[6] in their official capacities only, as employees of the City of Lorain.  (Doc. No. 1 at PageID# 10.)  Davison further states that he is suing Riley as acting Law Director for the City of Lorain.  (*Id.*) Davison does not indicate whether his Section 1983 claims are brought against Perez in his individual or official capacity.

On February 28, 2024, Perez filed a Motion to Dismiss Davison's Complaint.  (Doc. No. 5.) On March 7, 2024, City Defendants filed their own Motion to Dismiss Davison's Complaint.  (Doc. No. 6.)  On March 14, 2024, Davison filed a Response to Perez and the City Defendants' Motions to Dismiss.  (Doc. No. 8.)  On March 26, 2024, City Defendants filed a Reply to Davison's Response. (Doc. No. 9.)  Perez did not file a Reply.

Accordingly, Perez and City Defendants' Motions to Dismiss are ripe for a decision.

## II.    Standard of Review

Perez and City Defendants move to dismiss all of Davison's claims as asserted against them under Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure.  Pursuant to Rule 12(b)(6), the Court accepts Davison's factual allegations as true and construes the Complaint in the light most favorable to Davison.  *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  To survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers,*

---

[6] In their Motion to Dismiss, City Defendants contend that Davison's Complaint "does not indicate whether his claims against Rodriguez and Payne are brought in their official or personal capacities."  (Doc. No. 6-1 at PageID# 68.)  This contention is belied by Davison's Complaint, in which Davison expressly states that he is bringing his Section 1983 claims against Rodriguez and Payne in their official capacities as detectives with the Lorain Police Department.  (Doc. No. 1 at PageID# 10.)

*USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether a complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555–56). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679. Thus, "Rule 8(a)(2) of the Federal Rules of Civil Procedure 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Ctr. For Bio-Ethical Reform Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Iqbal*, 129 S. Ct. at 1949).

### III.    Analysis

As a preliminary matter, the Court addresses the propriety of Davison's Response.  Davison's Response contains numerous factual allegations and citations to various statutes and constitutional authority that do not appear in his Complaint.  (*See generally* Doc. No. 8.)  In their Reply, City Defendants request that the Court not consider these additional allegations in resolving the pending Motions to Dismiss.  (Doc. No. 9.)

A party "cannot . . . amend [his] complaint in an opposition brief or ask the court to consider new allegations . . . not contained in the complaint."  *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020).  Instead, the appropriate method for supplementing a complaint with additional facts to withstand a motion to dismiss is a motion to amend the complaint under Rule 15. *Id.*

In this case, Davison did not seek leave to amend his Complaint and does not request it in his Response.  Therefore, the Court will not consider the new factual allegations in Davison's Response and will only consider the allegations presented in Davison's Complaint.  *See Horizon Global Ams., Inc. v. Northern Stamping, Inc.*, 549 F. Supp. 3d 730, 735 n.3 (N.D. Ohio 2021).

#### A.    City Defendants' Motion to Dismiss

The Court begins with City Defendants' Motion to Dismiss, in which City Defendants move to dismiss Davison's twelve claims[7] pursuant to Rules 8(a) and 12(b)(6).  (Doc. No. 6-1 at PageID#s 55–64.)  Additionally, City Defendants assert that Davison's claims against Riley and Santiago should be dismissed because they are entitled to absolute immunity or, alternatively, qualified immunity, and

---

[7] Davison's Complaint fails to satisfy the requirements of Rule 10(b), which provides that pleadings must have separate "counts" for each claim.  Fed. R. Civ. P. 10(b).

that Davison's claims against Rodriguez and Payne should be dismissed because they are entitled to qualified immunity.  (*Id.* at PageID#s 64–68.)  The Court will address each of Davison's claims, in turn, below.

### 1.    *Monell* Claim Against Defendant City of Lorain

Davison's Complaint does not delineate the legal theory he asserts against the City of Lorain for his Section 1983 cause of action.  The Court construes Davison's cause of action against the City of Lorain as presenting a claim under *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694 (1978).

It is well established that an institution may not be sued for injuries inflicted solely by its employees or agents under Section 1983.  *Monell*, 436 U.S. at 694; *see also Baynes v. Cleland*, 799 F.3d 600 (6th Cir. 2015); *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014); *Heyerman v. County of Calhoun*, 680 F.3d 642 (6th Cir. 2012).  Rather, a plaintiff may only hold a defendant entity liable under Section 1983 for the entity's own wrongdoing.  *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) ("Section 1983 does not permit a plaintiff to sue a local government entity on the theory of *respondeat superior*.") (citing *Monell*, 436 U.S. at 692–94).  Or, as the Sixth Circuit explained, "a municipality is liable under § 1983 only where, 'through its deliberate conduct,' it was 'the 'moving force' behind the injury alleged.'"  *D'Ambrosio*, 747 F.3d at 388–89 (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013)) (citation omitted).  To properly allege an institutional liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of

13

tolerance [of] or acquiescence [to] federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013); *see also D'Ambrosio*, 747 F.3d at 386.

In this case, Davison does not allege that any purported unconstitutional conduct was a policy or custom of the City of Lorain or that any City of Lorain official ratified an illegal action.[8] *Bowman v. City of Fairview Park*, 2024 WL 1676855, at *5–6 (N.D. Ohio Apr. 17, 2024).  Nor does Davison allege any other facts that would demonstrate that the City of Lorain itself violated his rights.[9] Further, the words "pattern," "practice," "custom," or "policy" do not appear anywhere in Davison's Complaint.  *See Direct Constr. Servs., LLC v. City of Detroit*, 2019 WL 1787128, at *7 (E.D. Mich. Apr. 29, 2019), *aff'd*, 820 F. App'x 417 (6th Cir. 2020).  Davison indicates that he has "been through false warrants before" and that "this [is] a reoccurring thing."  (Doc. No. 1 at PageID#s 2, 11.)[10] However, even when Davison's allegation that "false warrants" have been issued against him before

---

[8] Davison alleges that Riley, as Law Director of the City of Lorain, despite being the only source of information on how to file a complaint against Santiago, refused to take his complaint, provide information on filing his complaint, or return his calls.  (Doc. No. 1 at PageID#s 4, 10.)  As discussed below, Davison does not explain or allege that Riley imposed an unconstitutional policy throughout the City of Lorain.  Accordingly, Davison's allegations of Riley's conduct do not constitute a plausible *Monell* claim.

[9] Davison lists "discrimination" as a potential ground for relief, which conceivably could relate to a *Monell* claim.  (Doc. No. 1 at PageID# 1). *See Direct Constr. Servs., LLC v. City of Detroit*, 820 F. App'x 417, 427 (6th Cir. 2020).  However, Davison's Complaint contains no facts that would support a discrimination claim and does not allege a federal discrimination law that was violated, how or on what basis he was discriminated against, who engaged in discriminatory conduct, or whether the City of Lorain had a policy or custom of discrimination.  (Doc. No. 6-1 at PageID# 58.)  Therefore, Davison's bare "discrimination" allegation does not support a *Monell* claim.

[10] In his Response, Davison contends that Santiago either instructed Rodriguez to write the narrative report "or wrote it herself," and that "this clearly must be a custom or allowed."  (Doc. No. 8 at PageID# 75.)  Davison further insists that "[s]tudies show [that prosecutorial misconduct] is a common practice in Ohio."  (*Id.* at PageID# 78.)  The Court concludes that these assertions do not substantiate a *Monell* claim.  Not only do these allegations not appear in Davison's Complaint, and therefore cannot be considered, but Davison does not explain how Santiago's involvement with writing the narrative report can alone constitute a custom or permitted practice.  *See Snyder v. United States*, 990 F. Supp. 2d 818, 845 (S.D. Ohio 2014) ("[A] single instance of alleged unconstitutional conduct will not suffice to state a Section 1983 [*Monell*] claim . . . .").  Further, Davison's allegation that prosecutorial conduct is common in Ohio does not indicate that such a practice is common in the City of Lorain.  Accordingly, the Court rejects these contentions.

is taken as true, Davison still does not allege that the City of Lorain or its employees were responsible for these prior instances, how many such instances there were, or that these warrants were issued pursuant to a policy or custom of the City of Lorain. *See Walters v. NaphCare, Inc.*, 2010 WL 1390383, at *6 (S.D. Ohio Mar. 31, 2010) ("[I]t is axiomatic that a § 1983 [] complaint must reveal which of his 'rights, privileges, or immunities secured by the Constitution and laws' were denied, who was responsible, and, in basic terms, how that deprivation came about."); *Jane v. Patterson*, 2017 WL 1345242, at *6 (N.D. Ohio Apr. 12, 2017) (requiring plaintiff to identify a "specific policy or custom" for sufficient *Monell* claim). Therefore, Davison's Complaint fails to plausibly suggest any type of *Monell* claim against the City of Lorain.

Accordingly, the Court grants City Defendants' Motion to Dismiss the City of Lorain.

### 2. Official Capacity: Defendants Santiago, Rodriguez, Payne, and Riley

As noted above, Davison brings his Section 1983 claims against individual City Defendants Santiago, Rodriguez, and Payne in their official capacities only. (Doc. No. 1 at PageID# 10.)

Davison also alleges that he is suing Riley as "acting law director" for the City of Lorain, but does not expressly indicate whether Riley is sued in his official capacity. (*Id.*) For the following reasons, the Court concludes that Davison brings his claims against Riley in his official capacity only. "Generally, plaintiffs must designate in which capacity they are suing defendants; if not, by operation of law, defendants are deemed sued in their official capacities." *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999). Davison only refers to Riley by his official title, and at no point refers to Riley's individual capacity. (*Id.*) *See Wolfe v. Ohio Dep't of Corr. & Rehab.*, 2022 WL 1591304, at *3 (N.D. Ohio May 19, 2022). And nothing in Davison's Complaint suggests that he brings his Section 1983 clams against *any* of the individual City Defendants in their individual capacities. *See Direct Constr.*

*Servs., LLC v. City of Detroit*, 2019 WL 1897128, at *6 (E.D. Mich. Apr. 29, 2019) (dismissing official-capacity claims against individual defendants where complaint did not suggest that plaintiff brought individual capacity claims).  Indeed, Davison's allegations that Riley refused to take his complaint against Santiago, return his call, or provide him with information on how to file a complaint all concern conduct that Riley allegedly engaged in as Law Director for the City of Lorain.  (Doc. No. 1 at PageID#s 4, 10.)  Therefore, the Court construes Davison's claim against Riley as one brought in his official capacity only.[11]

"An individual-capacity claim is distinct from a claim against a defendant in his official capacity.  The former claim may attach personal liability to the government official, whereas the latter may attach liability only to the governmental entity."  *Essex v. County of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013) (citing *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985)).[12]  Official capacity suits therefore "represent only another way of pleading an action against an entity of which

---

[11] Davison claims that he experienced "threats and harassment," which may relate to an individual capacity claim.  (Doc. No. 1 at PageID# 1.)  In particular, Davison alleges that, after he filed his complaint against Rodriguez on November 16, 2023, he received "threatening phone calls" and texts about "guns and drugs" from unknown individuals that he thought were Lorain police officers, and that in one of these calls Davison was told to "stop filing complaints or something would stick in my anus."  (*Id.* at PageID#s 4–5.)  However, while Davison alleges that he "thought" that "Lorain police officers" may have called and texted him, he does not allege that any Defendant in this case was behind the threats or harassment.  (Doc. No. 1 at PageID# 5.)  This "thought" alone does not constitute an allegation that unnamed Lorain police officers, let alone City Defendants, engaged in any challenged action.  *Spencer v. City of Hendersonville*, 2021 WL 8016828, at *6 (6th Cir. Oct. 8, 2021).  Although Davison is a *pro se* litigant, the Court will not develop Davison's arguments or allegations for him.  *See Rogers v. City of Detroit*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2008).

[12] In City Defendants' Motion to Dismiss, the individual City Defendants assert prosecutorial immunity and qualified immunity, which are defenses available only to individuals sued in their *individual* capacities.  (Doc. No. 6-1 at PageID#s 64–68); *Cady v. Arenac County*, 574 F.3d 334 (6th Cir. 2009) ("Absolute immunity is a personal defense that is unavailable in an official-capacity action. . . . [T]herefore, County Prosecutor Broughton is not entitled to absolute prosecutorial immunity in his official capacity."); *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005) ("The qualified immunity defense is not available to . . . persons acting on behalf of municipalities[] . . . when sued in their official capacity only.").  Because the Court concludes that Davison only brings claims against the individual City Defendants in their official capacity, the Court need not consider whether any City Defendant is entitled to prosecutorial or qualified immunity.

an officer is an agent." *Graham*, 473 U.S. at 165–66; *Petty v. County of Franklin*, 478 F.3d 341, 349 (6th Cir. 2007). In other words, "[i]n an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent." *Cady v. Arenac County*, 574 F.3d 334, 342 (6th Cir. 2009) (citation omitted); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Accordingly, "a successful suit against a municipal officer in his official capacity must meet the requirements for municipal liability stated in *Monell*." *Kraemer v. Luttrell*, 189 F. App'x 361, 366 (6th Cir. 2006); *see Gomez v. City of Canton Police Dep't*, 2024 WL 2702123, at *4 (N.D. Ohio May 24, 2024). ("Claims brought against . . . officers in their official capacity[] are governed by *Monell* and its progeny."); *Koren v. Neil*, 2022 WL 974340, at *11 (S.D. Ohio Mar. 31, 2022) (same). Where a plaintiff brings a *Monell* claim against a named government entity defendant as well as against employees of the government entity in their official capacity, the official-capacity claims are treated as *Monell* claims. *See Fluker v. Cuyahoga County*, 2019 WL 3718619, at *3 (N.D. Ohio Aug. 7, 2019) ("To the extent these two claims are pleaded against the County, as well as [individual defendants] in their official capacities, they are both *Monell* claims.").

As discussed above, Davison has failed to plead sufficient facts to state a plausible *Monell* claim against the City of Lorain, thereby warranting its dismissal. Therefore, Davison's Section 1983 official capacity claims against individual City Defendants Santiago, Rodriguez, Payne, and Riley are likewise dismissed.[13] *See Peroli v. County of Medina*, 2020 WL 2405354, at *16 (N.D. Ohio May

---

[13] Even if Davison had sufficiently alleged a *Monell* claim, Davison's claim against City Defendants would still be dismissed as "duplicative" since the City of Lorain, the employer of the individual City Defendants, is also named as a defendant. *See Waddell v. Lewis*, 2024 WL 1071900, at *2 (S.D. Ohio Mar. 12, 2024); *Johnson v. Wa. Cnty. Career Ctr.*, 2010 WL 2570929, at *4 (S.D. Ohio June 22, 2010) (collecting cases); *Direct Constr. Servs., LLC v. City of Detroit*, 820 F. App'x 417, 420 (6th Cir. 2020) ("The claims against the individuals sued exclusively in their official capacities were

12, 2020) (granting judgment on the pleadings for municipal employee because plaintiffs' Section 1983 claims against municipal employer were dismissed).

### B.      Perez's Motion to Dismiss

The Court next turns to Perez's Motion to Dismiss.  (Doc. No. 5.)  In his Motion to Dismiss, Perez argues that Davison's claims against him should be dismissed under Rule 8(a) and Rule 12(b)(6)[14] because Davison "makes only a single, simple reference to Perez" in his Complaint.  (Doc. No. 5 at PageID# 43.)  According to Perez, this single reference fails to meet the minimum pleading requirements established by Rules 8(a) and 12(b)(6), and no "conceivable enhancements [can] be drawn from this reference that shows that Davison is entitled to relief of any sort."  (*Id.*)  Thus, Perez contends that Davison fails to show how any of Perez's actions are related to Davison's federal rights. (*Id.* at PageID# 44.)  Alternatively, Perez insists that his actions as alleged by Davison are a "function of the judicial phase of the criminal process" and therefore are protected by the doctrine of absolute prosecutorial immunity.  (*Id.* at PageID#s 44–45.)

In response, Davison only[15] reiterates the factual allegation that Davison had motions pending in his state court criminal case that Perez "was just allowed to ignore."  (Doc. No. 8 at PageID# 77.)

---

properly dismissed because they are duplicative of the claims against the entities for which the individuals work."). However, because the Court has already concluded that Davison fails to state a plausible claim against the City of Lorain, Davison's official-capacity suits can be dismissed outright.  *See Peroli v. County of Medina*, 2020 WL 2405354, at *16 (N.D. Ohio May 12, 2020).

[14] Perez distinguishes between dismissal under Rule 8(a) and Rule 12(b)(6).  (Doc. No. 5 at PageID#s 42–44.)  However, on a Rule 12(b)(6) motion, the plausibility requirement of Rule 12(b)(6) is read in conjunction with the pleading requirements of Rule 8(a).  *Miller v. Allianz Life Ins. Co. of N.A.*, 2020 WL 5653548, at *2 (N.D. Ohio Sept. 23, 2020). Accordingly, the Court will analyze Perez's Motion to Dismiss under a single Rule 12(b)(6) standard.

[15] Davison's Response includes numerous additional facts that are absent in his Complaint, some of which invoke Perez. (*See generally* Doc. No. 8.)  As discussed above, Davison, even as a *pro se* litigant, cannot rely on facts not included in his Complaint to survive a Rule 12(b)(6) motion to dismiss.  Accordingly, in analyzing Perez's Motion to Dismiss, the Court is relying only on the factual allegations set forth in Davison's Complaint.

18

The Court agrees with Perez that Davison has failed to meet the minimum pleading standards of Rules 8(a) and 12(b)(6).  To properly plead a Section 1983 claim, a plaintiff must allege two elements: "(1) the defendant acted under color of state law; and (2) the defendant's conduct deprived the plaintiff of rights secured under federal law." *Chambers v. Sanders*, 63 F.4th 1092, 1096 (6th Cir. 2023) (internal quotation marks omitted) (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)).  In this case, the sole mention of Perez in Davison's Complaint is in the following allegation: "As of today, there are motions Victor Perez has not responded to and the court has allowed it."  (Doc. No. 1 at PageID# 5.)  Davison does not allege that Perez was acting under color of state law or, more importantly, how Perez's failure to respond to any motions violated his federal rights.  The Complaint's single reference to Perez is insufficient to provide Perez with notice of the factual basis for an alleged violation or state a Section 1983 claim.

Further, while Davison does not indicate whether he is suing Perez in his official or individual capacity, the Court concludes that Davison's Complaint fails to state a claim against Perez.  If Davison's claim against Perez is brought in his official capacity, because Perez is a prosecutor for Lorain County, Davison's claim against Perez is effectively a *Monell* claim against Lorain County. *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. at 690 n.55).  However, Davison fails to allege facts that would indicate that Perez violated his rights pursuant to any policy or custom of Lorain County, and therefore has failed to state a plausible *Monell* claim against Lorain County.  Accordingly, any official-capacity claim Davison brings against Perez must be dismissed.

---

Indeed, Davison does not list Perez as a Defendant in the *pro se* Complaint for a Civil Case form attached to his Complaint. (*See* Doc. No. 1 at PageID# 8.)

19

If Davison brings his claim against Perez in his individual capacity, the claim must still be dismissed. As noted, Perez raises the defense of absolute prosecutorial immunity. (Doc. No. 5 at PageID#s 44–45.) Prosecutors are entitled to absolute immunity from damages for initiating a prosecution and presenting the State's case. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993). County prosecutors, such as Perez, are covered by the absolute immunity doctrine. *See Shoultes v. Laidlaw*, 886 F.2d 114, 118 (6th Cir. 1989); *Red Zone 12 LLC v. City of Columbus*, 758 F. App'x 508, 513 (6th Cir. 2019).

In determining whether an official is entitled to prosecutorial immunity, courts employ a "functional approach" and look to the "nature of the function performed, not the identity of the actor who performed it." *Cooper v. Parrish*, 203 F.3d 937, 944 (6th Cir. 2000) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). When performing functions that are "intimately associated with the judicial phase of the criminal process," a prosecutor is absolutely immune from civil suit, even if the prosecutor has an improper motive, acts in bad faith, or even acts in an unquestionably illegal manner. *Imbler*, 424 U.S. at 430; *Cady v. Arenac County*, 574 F.3d 334, 341 (6th Cir. 2009); *see also Imbler*, 424 U.S. at 431 & n.34 (holding that a prosecutor is still immune, even after presenting false evidence at trial); *Beckett v. Ford*, 384 Fed. Appx 435, 452 (6th Cir. 2010) (finding a prosecutor who threatened witnesses to be immune).

In this case, Davison's only allegation involving Perez, as mentioned above, is that Perez has failed to respond to "motions." (Doc. No. 1 at PageID# 5.) Motions practice is certainly an ordinary function of the judicial criminal process and procedure. *See Franklin v. Ackerman*, 2021 WL 1254688, at *1 (W.D. Wash. Mar. 10, 2021), *report and recommendation adopted*, 2021 WL 1250522 (W.D. Wash. Apr. 2, 2021) ("Responding to motions filed by criminal defendants is a lawyer function

and prosecutors are absolutely immune from damages under § 1983 when acting within the scope of their duties in presenting the state's case.").  Therefore, Perez's alleged failure to respond to any of Davison's motions would be protected by prosecutorial immunity.

For the foregoing reasons, the Court grants Perez's Motion to Dismiss.

**IV.    Conclusion**

For the reasons set forth above, the Court **GRANTS** Perez's Motion to Dismiss, and **GRANTS** City Defendants' Motion to Dismiss.  (Doc. Nos. 5, 6.)

**IT IS SO ORDERED.**

_ s/Pamela A. Barker_
PAMELA A. BARKER
Date:  June 5, 2024                                  U. S. DISTRICT JUDGE

21